UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT A. COX,

Plaintiff,

v.

CITY OF NEW ROCHELLE, *et al.*,

Defendants.

No. 17-CV-8193 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Robert A. Cox
New Rochelle, NY
*Pro Se Plaintiff*

Lalit K. Loomba, Esq.
Peter A. Meisels, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
White Plains, NY
*Counsel for Defendants City of New Rochelle, William Odell, Rocco Oppedisano, Robert Boyko*

Kevin T. Conklin, Esq.
Mead, Hecht, Conklin & Gallagher
White Plains, NY
*Counsel for Defendant Elizabeth Sofroniou*

Joseph A. Materazo, Esq.
Churbuck, Calabria, Jones & Materazo, PC
Hicksville, NY
*Counsel for Defendant Bianca R. Darminio*

Irma W. Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant Grant O'Donnell*

Richard D. Bentzen, Esq.
Cerussi & Spring
White Plains, NY
*Counsel for Defendant Vincent A. Cuccia*

KENNETH M. KARAS, United States District Judge:

Robert A. Cox ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against the City of New Rochelle ("New Rochelle"); New Rochelle police officers William Odell ("Odell"), Rocco Oppedisano ("Oppedisano"), and Robert Boyko ("Boyko") (together with New Rochelle, the "New Rochelle Defendants"); six private Westchester County citizens, Elizabeth Sofroniou ("Sofroniou"), Vincent A. Cuccia ("Cuccia"), Bianca R. Darminio ("Darminio"), Anthony Vukel ("Vukel"), Juan Vincent Quiao ("Quiao"), and Christopher Fazio ("Fazio"); and Westchester County Assistant District Attorney ("ADA") Grant O'Donnell ("ADA O'Donnell") (collectively, "Defendants").[1]  Plaintiff, a journalist, alleges that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments, as well as under New York law, in connection with an October 2014 assault and subsequent criminal prosecution. Before the Court are motions to dismiss (the "Motions") filed by the New Rochelle Defendants, (Dkt. Nos. 33, 36); ADA O'Donnell, (Dkt. No. 38); Darminio, (Dkt. No. 51); Sofroniou, (Dkt. No. 56); and Cuccia, (Dkt. No. 64).[2]  For the reasons that follow, the Motions are granted.

## I.  Background

### A.  Factual History

The following allegations are drawn from the Amended Complaint, (Am. Compl. (Dkt. No. 34-2)), and are taken as true for the purpose of resolving the instant Motions.[3]

---

[1] Plaintiff additionally names as Defendants multiple John Doe employees of New Rochelle, its Police Department, and the Westchester County District Attorney's Office.

[2] Vukel and Quiao, who were served on July 13, 2018, (Dkt. Nos. 16, 19), have not moved to dismiss, answered, or otherwise appeared in this Action.  Fazio has not been served. (Dkt. No. 25.)

[3] Plaintiff did not file the Amended Complaint with the Court.  Although Plaintiff filed the initial Complaint on October 24, 2017, (Dkt. No. 1), he appears to have served the Amended

2

Plaintiff is a journalist who operates a website, entitled "Talk of the Sound," that publishes news and investigatory journalism about New Rochelle. (Am. Compl. ¶¶ 2, 28–41.) Between 2010 and 2013, Plaintiff published articles about political corruption and other official misconduct in and around New Rochelle. (*Id.* ¶¶ 42–90.) Some of those articles implicated Defendant Odell and Defendant Oppedisano's brother, among other police officers; others criticized Westchester County ADAs, New Rochelle officials, and private contractors working with New Rochelle. (*Id.*) Plaintiff's articles angered the New Rochelle Police Department, the Westchester County District Attorney's Office, and other New Rochelle officials. (*Id.* ¶¶ 55, 63, 65, 67, 70–71, 85, 152, 169.)

On October 19, 2014, at about 1:30 a.m., Plaintiff was assaulted and beaten in front of his home in New Rochelle by Defendants Sofroniou, Cuccia, Darminio, Vukel, Quiao, and Fazio, causing him physical injury. (*Id.* ¶¶ 93–94, 138.) The police — including Defendants Boyko, Oppedisano, and Odell — were stationed nearby, but intentionally arrived late. (*Id.* ¶¶ 96–117, 126.) When the officers did arrive, they "did not interview Cox, his wife[,] . . . the neighbor who called 911[,] or the son of [that] neighbor," nor did they interview the alleged assaulters or "canvass the neighborhood for witnesses." (*Id.* ¶¶ 118–19.) Further, the officers arrested Plaintiff and charged him with criminal mischief, harassment, and menacing. (*Id.* ¶¶ 95, 120–21.) Plaintiff was prevented by the police from filing a cross-complaint against the alleged assaulters. (*Id.* ¶¶ 139–41.) At some later point, a police detective (not named as a Defendant) told Plaintiff, "[T]he case against you is bullshit, if your name wasn't 'Robert Cox' these charges would never have been brought." (*Id.* ¶ 146.) The Westchester County District Attorney's

---

Complaint directly on Defendants. No Defendant has objected to consideration of the Amended Complaint and, indeed, Defendants treat that pleading as operative. Accordingly, the Court will consider the Amended Complaint to be the operative pleading. (*See* Dkt. No. 34-2.)

Office worked with the New Rochelle Police Department "to concoct a story that would lead to [criminal] charges against [P]laintiff." (*Id.* ¶ 152.) Further, even though Sofroniou "did not want to file charges," ADA O'Donnell "kept talking to the parties to convince them to pursue charges," (*id.* ¶ 150), due to an "animus towards [Plaintiff]," (*id.* ¶ 152). Plaintiff went to trial, at which Sofroniou, Darminio, and Cuccia testified falsely in conspiracy with the police officers and ADA O'Donnell. (*Id.* ¶¶ 153–59.) Plaintiff was convicted of the criminal charges. (*Id.* ¶¶ 152, 164.)

B. Procedural History

The initial Complaint was filed in this Court on October 24, 2017. (Compl. (Dkt. No. 1).) The Amended Complaint, which Plaintiff did not file with the Court (but which has been filed by Defendants, (*see, e.g.*, Dkt. No. 34-2)), was served on Defendants at an unspecified time. *See supra* note 3.

On September 21, 2018, the New Rochelle Defendants filed their Motion To Dismiss and accompanying papers. (Not. of Mot. (Dkt. No. 33); Decl. of Lalit K. Loomba, Esq. in Supp. of Mot. ("New Rochelle Decl.") (Dkt. No. 34); Mem. of Law in Supp. of Mot. ("New Rochelle Mem.") (Dkt. No. 35); Am. Not. of Mot. (Dkt. No. 36); Suppl. Mem. of Law in Supp. of Mot. ("New Rochelle Suppl. Mem.") (Dkt. No. 37).) On the same date, ADA O'Donnell filed his Motion To Dismiss and accompanying papers. (Not. of Mot. (Dkt. No. 38); Decl. of Irma Cosgriff, Esq. in Supp. of Mot. ("O'Donnell Decl.") (Dkt. No. 39); Mem. of Law in Supp. of Mot. ("O'Donnell Mem.") (Dkt. No. 40).) On November 12, 2018, Darminio filed her Motion To Dismiss and accompanying papers. (Not. of Mot. (Dkt. No. 51); Mem. of Law in Supp. of Mot. ("Darminio Mem.") (Dkt. No. 52); Decl. of Joseph A. Materazo, Esq. in Supp. of Mot. ("Darminio Decl.") (Dkt. No. 53).) On the same date, Sofroniou filed her Motion To Dismiss

and accompanying papers. (Not. of Mot. (Dkt. No. 56); Decl. of Kevin T. Conklin, Esq. in Supp. of Mot. ("Sofroniou Decl.") (Dkt. No. 57); Mem. of Law in Supp. of Mot. ("Sofroniou Mem.") (Dkt. No. 58).) On December 7, 2018, Cuccia filed his Motion To Dismiss and accompanying papers. (Not. of Mot. (Dkt. No. 64); Decl. of Richard D. Bentzen, Esq. in Supp. of Mot. ("Cuccia Decl.") (Dkt. No. 65); Mem. of Law in Supp. of Mot. ("Cuccia Mem.") (Dkt. No. 66).)

Plaintiff has filed multiple memoranda in opposition to Defendants' Motions, all of which make virtually identical legal arguments, but to which are attached different documents. (Mem. of Law in Opp'n to Mot. ("Pl.'s First Mem.") (Dkt. No. 70); Mem. of Law in Opp'n to Mot. ("Pl.'s Second Mem.") (Dkt. No. 84); Mem. of Law in Opp'n to Mot. ("Pl.'s Third Mem.") (Dkt. No. 97).)

On February 4, 2019, the New Rochelle Defendants filed their reply. (Reply Aff. of Lalit K. Loomba, Esq. in Supp. of Am. Mot. ("New Rochelle Reply Decl.") (Dkt. No. 76); Reply Mem. of Law in Supp. of Am. Mot. ("New Rochelle Reply") (Dkt. No. 77).) On the same date, ADA O'Donnell filed his reply. (Reply Mem. of Law in Supp. of Mot. ("O'Donnell Reply") (Dkt. No. 78).) On March 8, 2019, Cuccia filed his reply. (Reply Mem. of Law in Supp. of Mot. ("Cuccia Reply") (Dkt. No. 86).) On June 21, 2019, Darminio filed her reply. (Reply Mem. of Law in Supp. of Mot. ("Darminio Reply") (Dkt. No. 99).) On the same date, Sofroniou filed her reply. (Reply Mem. of Law in Supp. of Mot. ("Sofroniou Reply") (Dkt. No. 101).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense. But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the

pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.

Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").

     In considering a motion to dismiss, the Court "must accept as true all of the factual

allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)).

Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

Plaintiff alleges (1) conspiracy, (Am. Compl. ¶ 164); (2) retaliation, in violation of the

First Amendment, (*id.* ¶ 167); (3) false arrest, excessive force, and malicious prosecution, in violation of the Fourth Amendment, (*id.* ¶¶ 167, 171, 175, 178); (4) municipal liability against New Rochelle, (*id.* ¶ 183); (5) and related violations of New York law, (*id.* ¶¶ 191, 194, 197).[4]

Defendants seek dismissal of the Amended Complaint in its entirety principally on grounds that (1) certain claims are barred by *Heck v. Humphrey*; (2) the First Amendment retaliation claim and the Fourth Amendment false arrest and excessive force claims are time-barred; (3) Plaintiff fails on the merits to state any constitutional violation; (4) Plaintiff fails to state a *Monell* claim; and (5) Plaintiff's state law claims are time-barred. (*See generally* New Rochelle Mem.; Darminio Mem.; Sofroniou Mem.; Cuccia Mem.)[5] New Rochelle also seeks dismissal of claims against it on grounds that Plaintiff fails to allege compliance with New York's notice-of-claim requirement. (New Rochelle Suppl. Mem. 1.) ADA O'Donnell also seeks dismissal of claims against him principally on grounds of absolute prosecutorial immunity. (*See* O'Donnell Mem. 14–16.)

---

[4] Although Plaintiff appears to style his retaliation, false arrest, excessive force, and malicious prosecution claims as arising under the Fifth and Fourteenth Amendments, (Am. Compl. ¶¶ 167, 171), these claims arise under the First and Fourth Amendments.

Separately, Plaintiff brings a claim for "respondeat superior." (*Id.* ¶ 203.) However, "respondeat superior is a theory of liability, not a freestanding cause of action." *Scott v. City of Mount Vernon*, No. 14-CV-4441, 2017 WL 1194490, at *25 (S.D.N.Y. Mar. 30, 2017) (collecting cases).

[5] As a preliminary matter, the Court notes that there is significant doubt as to whether *Heck v. Humphrey*, 512 U.S. 477 (1994), bars a § 1983 claim where, as here, Plaintiff is not presently incarcerated and was not incarcerated when he commenced this Action. *See Wilson v. Celestin*, No. 17-CV-5592, 2019 WL 2211062, at *2 n.6 (E.D.N.Y. May 22, 2019) ("[T]here is substantial dispute as to the applicability of *Heck*'s favorable termination requirement to an individual who is not 'in custody' within the meaning of habeas under federal law, or otherwise cannot obtain federal habeas relief . . . ." (collecting cases)); *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 455–59 (E.D.N.Y. 2018) (describing competing interpretations of *Heck*'s favorable termination rule). Because the Court dismisses Plaintiff's § 1983 claims on other grounds, it need not weigh in on this dispute.

The Court address each argument separately to the extent necessary.

### 1. Statute of Limitations

Defendants argue that Plaintiff's First Amendment claim of retaliation and his Fourth Amendment claims of false arrest and excessive force, (Am. Compl. ¶¶ 167–81), are barred by the statute of limitations, (New Rochelle Mem. 7–9).

"In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions.'" *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (citation and alterations omitted). Here, New York's three-year statute of limitations for personal injury actions applies. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (holding that, because § 1983 does not contain a specific statute of limitations, courts apply the statute of limitations for personal injury actions under state law, which in New York is three years (citing N.Y. C.P.L.R. § 214(5))).

The events giving rise to this case — the alleged assault and Plaintiff's arrest — are alleged to have occurred on October 19, 2014. (Am. Compl. ¶¶ 93, 95, 138.) The statute of limitations thus began running on that day and expired three years later, on October 19, 2017. Plaintiff's initial Complaint was filed in this Court on October 24, 2017, five days after expiration of the limitations period. (*See* Dkt. (noting that Complaint was filed on Oct. 24, 2017).) Plaintiff argues that he "filed his original complaint by mail on October 19, 2017," within the limitations period, and that "a time stamped copy of the envelope should be on file" with the Court. (Pl.'s First Mem. 35.)[6] However, the date stamp on the Complaint states that it was filed in this Court on October 24, 2017, at 2:06 p.m. (*See* Compl. 1.) There is no indication

---

[6] Plaintiff's filings do not use consistent page numbering. For ease of reference, the Court cites to the ECF-generated page numbers at the top of each page.

of a filing on October 19, 2017.  Indeed, numerous other letters filed by Plaintiff state that he

"filed as a pro se litigant on October 24, 2017."  (*See* Dkt. Nos. 3, 5, 47, 68, 69, 74, 83, 89.)[7]

The Court therefore concludes that Plaintiff's claims arising out of the events of October 19,

2014 — those of retaliation, false arrest, and excessive force — are time-barred, and,

accordingly, must be dismissed.  *See Rivera v. City of New York*, No. 16-CV-9709, 2019 WL

252019, at *4 (S.D.N.Y. Jan. 17, 2019) (dismissing excessive force claim as time-barred where

the plaintiff did not file the complaint until more than three years after his arrest); *Williams v.

City of New York*, No. 12-CV-8518, 2014 WL 1383661, at *14 (S.D.N.Y. Mar. 26, 2014)

(denying leave to amend on grounds that retaliation claim would be time-barred because the

conduct occurred more than three years prior to the filing of the complaint), *aff'd*, 602 F. App'x

28 (2d Cir. 2015); *Mitchell v. Kugler*, No. 07-CV-1801, 2009 WL 160798, at *6 (E.D.N.Y. Jan.

23, 2009) (holding time-barred excessive force claim where the plaintiff did not file the action

until more than three years after the alleged use of force occurred); *see also Smith v. N.Y.C.

Dep't of Educ.*, 524 F. App'x 730, 732 (2d Cir. 2013) ("[The plaintiff's] claims of First

Amendment retaliation arising out of acts occurring prior to [three years before filing of the

complaint] are barred by the three-year statute of limitations.").

### 2.  Conspiracy Claim

Defendants argue that Plaintiff fails to plausibly state a claim of conspiracy.  (New

Rochelle Mem. 5; Darminio Mem. 5; Sofroniou Mem. 8; Cuccia Mem. 7; New Rochelle Reply

2; Darminio Reply 1; Sofroniou Reply 3.)

To state a claim for a conspiracy under § 1983, Plaintiff must allege facts showing:

---

[7] One letter, however, states that Plaintiff "filed as a pro se litigant on October 17, 2017."
(Dkt. No. 90.)

"(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *McGee v. Dunn*, No. 09-CV-6098, 2015 WL 9077386, at *5 (S.D.N.Y. Dec. 16, 2015) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)), *aff'd*, 672 F. App'x 115 (2d Cir. 2017); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (noting that where a plaintiff alleges that a private entity conspired with a state actor, "the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act" and was "a willful participant in joint activity with the State or its agents" (citations and quotation marks omitted)). "A conspiracy claim fails, however, where allegations are conclusory." *Cuellar v. Love*, No. 11-CV-3632, 2014 WL 1486458, at *9 (S.D.N.Y. Apr. 11, 2014); *see also Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983."). Rather, "[a]llegations of a conspiracy . . . must be pleaded with specificity," a "heightened standard." *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858925, at *5 (S.D.N.Y. Feb. 29, 2016); *see also Brewster v. Nassau County*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004) ("Claims alleging conspiracies to violate civil rights are held to a heightened pleading standard." (citation omitted)).

Here, Plaintiff alleges that Sofroniou, Cuccia, Darminio, Vukel, Quiao, and Fazio (collectively, the "Private Defendants") "acted jointly and conspired with" New Rochelle police officers Odell, Oppedisano, and Boyko, as well as ADA O'Donnell (collectively, the "State Defendants") in order to "concoct a story to sustain charges and a conviction against Plaintiff." (Am. Compl. ¶ 164; *see also id.* ¶ 152 (same).) As an initial matter, to the extent Plaintiff's conspiracy claim rests on alleged lies told at his criminal trial, (*see* Pl.'s First Mem. 40 (arguing

that Defendants "provided false and exaggerated written and oral testimony as to the persons and circumstances involved in the incident surrounding [Plaintiff's] arrest"), Defendants are immune from liability. *See Horn v. City of New Haven*, No. 18-CV-1502, 2019 WL 3006540, at *4 (D. Conn. July 9, 2019) ("Although the complaint alleges that [the witness] lied during his trial testimony, the law is clear that [the witness] has absolute immunity for his trial testimony." (original alterations omitted) (citing, inter alia, *Rehberg v. Paulk*, 566 U.S. 356, 366–68 (2012))); *Murray v. Guzman*, No. 19-CV-1959, 2019 WL 1745744, at *4 (S.D.N.Y. Apr. 17, 2019) ("Witnesses, including police officers, are absolutely immune from liability based on false testimony at trial." (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983))); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *11 (S.D.N.Y. Sept. 29, 2018) ("The Court finds that [the defendants] are entitled to absolute immunity from liability for the testimony they provided at [the plaintiff's] trial and for information they provided during preparatory meetings discussing that trial testimony. The Court will not consider trial testimony in deciding this motion.").

To the extent the conspiracy claim rests on Defendants' pre-trial actions, Plaintiff's allegations are insufficiently specific to plausibly meet the "heightened standard" required to state a claim. *Scalpi*, 2016 WL 858925, at *5. Plaintiff alleges that he was disliked by the State Defendants because of critical articles he had written and published between 2010 and 2013 about local police officers (including Odell) and prosecutors. (Am. Compl. ¶¶ 55, 63, 65, 67, 70–71, 85, 152, 169.) As a result of that animosity, Plaintiff alleges that, after being assaulted in October 2014 by the Private Defendants, the police officer Defendants intentionally delayed their arrival, and, upon arrival, failed to interview all of the witnesses to the assault and arrested Plaintiff, (*id.* ¶¶ 93–137); that the officers refused to allow Plaintiff to file a cross-complaint against the Private Defendants, (*id.* ¶¶ 139–41); that a (non-defendant) police detective told

Plaintiff that "the case against [him] is bullshit, if [his] name wasn't 'Robert Cox' these charges would never have been brought," (*id.* ¶ 146); that "Sofroniou did not want to file charges against" Plaintiff, but ADA O'Donnell "kept talking to the parties to convince them to pursue charges," (*id.* ¶¶ 150–51); and that some of the Private Defendants protected others "by not mentioning them to police," (*id.* ¶ 157), and by "concocting a story with the police" to avoid their being charged with assault and trespass and to ensure that Cuccia would not be disqualified from attempting to become a police officer, (*id.* ¶¶ 158–59). These thin allegations, however, do not plausibly suggest that there existed an agreement, whether "express or tacit," between the Private Defendants and the State Defendants to violate Plaintiff's civil rights. *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). A conspiracy claim requires "some factual basis supporting a meeting of the minds." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (citation and quotation marks omitted)). Yet, "[c]ritically absent from the [Amended] Complaint are any specific facts identifying 'willful collaboration' between [the Private Defendants] and [the State Defendants] to deny Plaintiff's constitutional rights . . . or [an] 'agreement' between the[m] . . . forming the conspiracy." *Harrison v. New York*, 95 F. Supp. 3d 293, 325 (E.D.N.Y. 2015) (citations omitted). Indeed, as to Sofroniou — the one Private Defendant about whom there are specific factual allegations — that she allegedly "did not want to file charges," (Am. Compl. ¶¶ 150–51), suggests that she did not willfully collaborate in any conspiracy. The Private Defendants' "[m]ere cooperation" (at best) with State Defendants "is insufficient to establish state action." *Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) (citations omitted). Accordingly, the Court dismisses Plaintiff's conspiracy claim. *See Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (dismissing conspiracy claim where "none of the[] allegations . . . show[ed] that [some

defendants] affirmatively agreed to engage in unconstitutional conduct with [other defendants]"
or "shared a common unlawful goal" (citations, quotation marks, and original alterations
omitted)); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *5 (S.D.N.Y. Aug. 8, 2018)
(dismissing conspiracy claim where the plaintiff did "not allege an agreement . . . to violate [the
plaintiff's] rights"); *Demosthene v. City of New York*, No. 14-CV-816, 2015 WL 5093116, at *7
(E.D.N.Y. June 26, 2015) (dismissing conspiracy claim where the "allegations [did] not permit a
reasonable inference that [the police officer defendants] ever agreed that they would work
together toward a collective goal of violating [the plaintiff's] rights"), *adopted by* 2015 WL
5093164 (E.D.N.Y. Aug. 28, 2015).

### 3. False Arrest and Malicious Prosecution Claims

The Court has already dismissed Plaintiff's false arrest and malicious prosecution claims
as time-barred. *See supra* Section II.B.1. Defendants argue that, even considering the merits of
these claims, Plaintiff fails to allege the elements necessary to state either claim. (New Rochelle
Mem. 9–12.)

"A [§] 1983 claim for false arrest is substantially the same as a claim for false arrest
under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (citation
and quotation marks omitted). "To prevail, a plaintiff must prove four elements: (1) the
defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement,
(3) the plaintiff did not contest the confinement[,] and (4) the confinement was not otherwise
privileged." *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014) (citation and
quotation marks omitted). Probable cause is a complete defense to an action for false arrest.
*Simpson*, 793 F.3d at 265. "[A] conviction for the offense which precipitated the arrest is
definitive evidence of probable cause." *Jean-Laurent v. Cornelius*, No. 15-CV-2217, 2017 WL

933100, at *4 (S.D.N.Y. Mar. 8, 2017); *see also Phelan v. Sullivan*, 541 F. App'x 21, 23 (2d Cir. 2013) ("A false arrest claim is defeated by the plaintiff's conviction for the offense for which he was arrested."); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause."); *Clark v. City of New York*, No. 16-CV-7744, 2018 WL 4372671, at *4 (S.D.N.Y. Sept. 13, 2018) ("A conviction of the crime for which an individual is arrested bars recovery for false arrest or malicious prosecution." (citing *Cameron*, 806 F.2d at 387)); *Hudson v. County of Dutchess*, No. 12-CV-5548, 2015 WL 7288657, at *11 (S.D.N.Y. Nov. 16, 2015) (collecting cases).

Similarly, the elements of a malicious prosecution claim "are governed by state law." *Spak v. Phillips*, 857 F.3d 458, 461 (2d Cir. 2017). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations and quotation marks omitted); *see also Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (same). "Thus, both false arrest and malicious prosecution require a showing that there was no probable cause for the arrest or prosecution." *Harris v. New York Div. of Parole*, No. 18-CV-1435, 2019 WL 1958017, at *2 (N.D.N.Y. May 1, 2019).

Here, Plaintiff cannot demonstrate either the absence of probable cause for his arrest (as required to state a false arrest claim) or that criminal proceedings terminated in his favor (as required to state a malicious prosecution claim) because, on April 19, 2017, Plaintiff was convicted at trial of menacing in the second degree, in violation of N.Y. Penal Law § 120.14, criminal mischief in the fourth degree, in violation of N.Y. Penal Law § 145.00, and harassment

in the second degree, in violation of N.Y. Penal Law § 240.26. (Am. Compl. ¶¶ 152, 164 (alleging that Plaintiff was convicted); New Rochelle Decl. Ex. C (certificate of disposition).)

Plaintiff has not alleged that his conviction has been invalidated or that the criminal proceeding against him was otherwise terminated in his favor. Therefore, notwithstanding Plaintiff's numerous arguments as to why there did not exist probable cause for his arrest, (*see, e.g.*, Pl.'s First Mem. 38–39), Plaintiff's valid convictions conclusively establish that he cannot allege the elements necessary to make out either a false arrest or malicious prosecution claim. Accordingly, those claims are dismissed. *See Cameron*, 806 F.2d at 388–89 (affirming dismissal of false arrest claim where the plaintiff was "convicted of the offense for which he was arrested"); *Wheeler v. Buckley*, No. 16-CV-7441, 2019 WL 2024005, at *9 (S.D.N.Y. May 7, 2019) (dismissing malicious prosecution claim where the plaintiff did not allege that the prior proceeding terminated in his favor); *Koltun v. Berry*, No. 13-CV-1612, 2016 WL 6601558, at *4 (S.D.N.Y. Nov. 7, 2016) ("[The plaintiff] has been convicted and sentenced in the underlying criminal case in state court. Therefore, he cannot maintain a cause of action for false arrest."), *adopted by* No. 13-CV-1612, 2017 WL 476693 (S.D.N.Y. Feb. 3, 2017); *Luckerson v. Hibbert*, No. 88-CV-5190, 1991 WL 115144, at *2 (S.D.N.Y. June 20, 1991) (dismissing false arrest claim where the plaintiff was convicted of "at least one of the charges for which [he] was arrested"), *aff'd*, 952 F.2d 394 (2d Cir. 1991).

### 4. Excessive Force Claim

The Court has already dismissed Plaintiff's excessive force claim as time-barred. *See supra* Section II.B.1. In any event, Plaintiff clearly fails on the merits to state a claim. To state an excessive force claim, Plaintiff must plausibly allege that the force used by the police officer Defendants — Odell, Oppedisano, and Boyko — was "objectively unreasonable." *Graham v.*

*Connor*, 490 U.S. 386, 397 (1989). Here, Plaintiff alleges no use of force at all by the police officers or any physical injury caused by his arrest (as opposed to injuries caused by the alleged assault by the Private Defendants). Accordingly, Plaintiff's excessive force claim is dismissed. *See Acevedo v. Ross*, No. 18-CV-6140, 2019 WL 343246, at *4 (E.D.N.Y. Jan. 28, 2019) (dismissing excessive force claim where the plaintiff did "not make allegations showing that arresting officers used any significant force whatsoever").

### 5. Municipal Liability

New Rochelle argues that Plaintiff fails to state a claim of municipal liability against it. (New Rochelle Mem. 13.)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted). A plaintiff may

satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff fails to allege the second element required to state a *Monell* claim because, as noted above, each of Plaintiff's federal claims — of conspiracy, retaliation, false arrest, excessive force, and malicious prosecution — are all barred by the statute of limitations or fail on the merits. There is thus no underlying constitutional deprivation upon which *Monell* liability may rest. *See Corley v. Vance*, 365 F. Supp. 3d 407, 462 (S.D.N.Y. 2019) ("Plaintiff has failed to demonstrate the existence of an underlying constitutional violation . . . , thereby precluding a *Monell* claim against the City." (ultimately citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006))); *Toussaint v. City of New York*, No. 17-CV-5576, 2018 WL 4288637, at *8 n.12 (E.D.N.Y. Sept. 7, 2018) ("Because Plaintiff has not established any underlying, independent constitutional claim, he has not stated a *Monell* claim.").

Further, Plaintiff fails to allege the fifth element required to state a *Monell* claim. Plaintiff alleges that New Rochelle, "acting through" its police department, "developed, implemented, enforced, encouraged[,] and sanctioned de facto policies, practices, and/or customs exhibiting indifference to the Plaintiff's constitutional rights." (Am. Compl. ¶ 183.) Plaintiff also alleges that New Rochelle failed "to adequately supervise and train its officers and agents, . . . to properly and adequately monitor and discipline its officers, . . . [and to] adequately and properly investigate citizen complaints of misconduct," (*id.* ¶ 185), and that New Rochelle has a

policy or practice of "unlawfully interfering with and/or arresting, without reasonable suspicion or probable cause, individuals who exercise their rights under the First Amendment by engaging in monitoring and documenting police activities and/or misconduct," (*id.* ¶ 186). Yet, apart from the incident giving rise to this case — the alleged October 19, 2014 assault, arrest, and ensuing criminal prosecution — Plaintiff fails to allege facts plausibly suggesting any other similar example of New Rochelle's failure to supervise or train officers, its failure to investigate complaints, or its interference with the monitoring of police activity. *See Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citation omitted)).

In response, Plaintiff argues that he alleges other "examples of New Rochelle Police Department agents arresting individuals without probable cause . . . or abusing their police powers with the assistance of the Westchester County District Attorney's Office." (Pl.'s First Mem. 38.) First, Plaintiff alleges that his journalistic outfit, Talk of the Sound, published articles in 2010 describing a New Rochelle police officer's February 2008 rape of a 17-year-old girl, eventually leading to that officer's arrest, resignation, and conviction. (Am. Compl. ¶¶ 49–54.) Second, Plaintiff alleges that Talk of the Sound published an article in September 2011 describing a local car crash that caused the family of the victim, including the "daughter of a retired New Rochelle police officer," to become angry at Plaintiff and create a Facebook group — which other police officers (including certain Defendants in this case) joined — that advocated for the boycott of Talk of the Sound and "encourage[ed] violence against [Plaintiff]." (*Id.* ¶¶ 68–77.) Yet, Plaintiff fails to explain how these alleged incidents are at all similar in kind to the conspiracy, false arrest, and malicious prosecution allegations at issue in this Action. *See*

*Tutora v. Gessner*, No. 17-CV-9517, 2019 WL 1382812, at *5 (S.D.N.Y. Mar. 27, 2019)

(dismissing *Monell* claim where the plaintiff failed to "allege facts showing that *similar* alleged

deprivations occurred . . . , such that it could be said that [the defendants] acted pursuant to an

informal municipal custom or practice" (emphasis added)).  The Court thus concludes that these

alleged incidents do not plausibly support his *Monell* claim.  *See Bd. of County Comm'rs of

Bryan County v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff

merely to identify conduct properly attributable to the municipality."); *Scott v. City of Rochester*,

No. 17-CV-6359, 2018 WL 4681626, at *6 (W.D.N.Y. Sept. 28, 2018) (dismissing *Monell* claim

where "the alleged incidents are not similar enough to this case"); *W.A. v. Hendrick Hudson

Cent. Sch. Dist.*, No. 14-CV-8093, 2016 WL 1274587, at *11 (S.D.N.Y. Mar. 31, 2016)

(dismissing *Monell* claim where the plaintiff alleged "isolated" and "factually dissimilar"

incidents "from the conduct giving rise to the instant Action"); *Murray v. Admin. for Children's

Servs.*, 476 F. Supp. 2d 436, 442 (S.D.N.Y. 2007) ("The Amended Complaint does not allege

other similar instances of malicious prosecution that could raise an inference that the City

maintains a policy or custom of deliberate indifference to these types of unconstitutional

deprivations."), *aff'd*, 293 F. App'x 831 (2d Cir. 2008).  Because Plaintiff fails to allege facts

plausibly suggesting the existence of a particular municipal policy or custom, the Court

concludes that Plaintiff fails to state a *Monell* claim against New Rochelle.

### 6.  State Law Claims Against New Rochelle

New Rochelle argues that all state law claims against it must be dismissed because

Plaintiff has not demonstrated compliance with New York's notice-of-claim requirement.  (New

Rochelle Supp. Mem. 1.)

Under New York law, "as a condition precedent to bringing a claim against a

municipality, a plaintiff must file a notice of claim within 90 days after her claim accrues."
*Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept.
27, 2017) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)). "Federal courts do not have jurisdiction to
hear complaints from plaintiffs who have failed to comply with the notice of claim requirement,
or to grant permission to file a late notice." *Gibson v. Comm'r of Mental Health*, No. 04-CV-
4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006). Further, "the burden is on [the
plaintiff] to demonstrate compliance with the notice of claim requirements." *Peritz v. Nassau
County Bd. of Coop. Educ. Servs.*, No. 16-CV-5478, 2019 WL 2410816, at *4 (E.D.N.Y. June 7,
2019) (citations omitted). "To survive a motion to dismiss, a plaintiff must affirmatively plead
that a notice of claim was filed." *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013)
(citations omitted). Here, Plaintiff has not pled that he complied with New York's notice of
claim requirement. (*See generally* Compl.; Am. Compl.) Accordingly, the Court dismisses
Plaintiff's state law claims against New Rochelle. *See El v. City of New York*, No. 14-CV-9055,
2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015) ("Absent a showing of such a notice of
claim, the complaint may be dismissed for failure to state a cause of action." (citation omitted));
*Naples*, 972 F. Supp. 2d at 390 (dismissing state law claims against municipality where "the
Amended Complaint [was] void of any allegation that a notice of claim was filed prior to the
commencement of [the] action").

### 7. Claims Against ADA O'Donnell

Plaintiff asserts only two claims against ADA O'Donnell: conspiracy and malicious
prosecution. (Am. Compl. ¶¶ 164, 178.) O'Donnell argues that absolute prosecutorial immunity

bars any claim against him.  (O'Donnell Mem. 14.)[8]

"Absolute immunity protects a prosecutor not only from liability but also from suit."

*Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (citation and quotation marks omitted).

Prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when

"function[ing] as advocates for the state in circumstances intimately associated with the judicial

phase of the criminal process."  *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004)

(citation and quotation marks omitted); *see also Kroemer v. Tantillo*, 758 F. App'x 84, 86–87 (2d

Cir. 2018) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually

all acts, regardless of motivation, associated with the prosecutor's function as an advocate."

(alterations omitted) (quoting *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995))).

However, not every action performed by a prosecutor is "absolutely immune merely because [it

was] performed by a prosecutor."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Rather, a

prosecutor's entitlement to absolute immunity turns on "the capacity in which the prosecutor acts

at the time of the alleged misconduct."  *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000).

Thus, to determine whether a prosecutor's conduct is entitled to absolute immunity, courts apply

"a functional approach, which looks to the nature of the function performed [by the prosecutor],

not the identity of the actor who performed it."  *Buckley*, 509 U.S. at 269 (citation and quotation

marks omitted); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (noting that courts

"must take account of . . . 'functional' considerations" in deciding "whether absolute immunity

attaches to a particular kind of prosecutorial activity").

It is clear that "the initiation and pursuit of a criminal prosecution are quintessential

---

[8] ADA O'Donnell also argues that Plaintiff failed to properly serve him.  (O'Donnell Mem. 12.)  Because the Court concludes that ADA O'Donnell is entitled to absolute immunity, however, it need not consider this argument.

prosecutorial functions" covered by absolute immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Hill*, 45 F.3d at 661 (noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings). Also covered is prosecutors' "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273; *see also Hill*, 45 F.3d at 661 (noting that prosecutors are "immune for conduct in preparing for [prosecutorial] functions," including "evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged" (citations omitted)). Absolute immunity also protects "the knowing presentation of perjured testimony to a grand jury, without any prosecutorial involvement in its earlier inducement." *Bernard*, 356 F.3d at 506. Furthermore, a prosecutor's motives for actions that are deemed to be within his or her role as an advocate are irrelevant for purposes of absolute immunity. *See Shmueli*, 424 F.3d at 237–38 (holding that absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy"); *Bernard*, 356 F.3d at 503 (holding that "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused" (citation omitted)). In contrast, "[w]hen a [prosecutor] functions outside his or her role as an advocate for the People, the shield of [absolute] immunity is absent." *Hill*, 45 F.3d at 661. Specifically, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273 (citation and quotation marks omitted); *see also Smith v.*

*Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) ("[W]hen a prosecutor . . . performs the investigative functions normally performed by a detective or police officer, he is eligible only for qualified immunity." (citation and quotation marks omitted)).

Although the line between a prosecutor's acts as an advocate and as an investigator is often "difficult to draw," *Zahrey*, 221 F.3d at 347, "[t]he key . . . is the degree to which the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,'" *DiBlasio v. Novello*, 344 F.3d 292, 300 (2d Cir. 2003) (quoting *Imbler*, 424 U.S. at 430). In assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant, but not dispositive. *See id.* at 300–01. For example, the Supreme Court has observed that absolute immunity is unavailable for investigative conduct that takes place before probable cause has been established. *See Buckley*, 509 U.S. at 274; *see also Zahrey*, 221 F.3d at 347 n.2 (explaining that *Buckley* "suggests that a prosecutor's conduct prior to the establishment of probable cause should be considered investigative"). The converse is not necessarily true, however. "[A] determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards." *Buckley*, 509 U.S. at 274 n.5. The Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand — making clear that only the former entitles a prosecutor to absolute immunity. *Smith*, 147 F.3d at 94.

"[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery . . . because an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Deronette v. City of New York*, No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y.

Mar. 27, 2007) (citations, alterations, and quotation marks omitted). "However, the Second Circuit has held that, 'when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss.'" *Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 65 (E.D.N.Y. 2010) (quoting *Hill*, 45 F.3d at 663).

Plaintiff makes two allegations as to ADA O'Donnell. First, Plaintiff alleges that even though "Sofroniou did not want to file [criminal] charges against [Plaintiff]," O'Donnell "kept talking to the parties to convince them to pursue charges," (Am. Compl. ¶ 150), and "aggressively pursued the complaint against [Plaintiff]," (*id.* ¶ 162). As an initial matter, this allegation is in need of "further factual enhancement," *Iqbal*, 556 U.S. at 678, for it is of course the prosecutor, rather than a private citizen, who decides whether to pursue criminal charges, *see Genao v. Police Serv. Area 6*, No. 19-CV-3050, 2019 WL 2866561, at *1 (S.D.N.Y. July 1, 2019) ("[P]rivate citizens cannot prosecute criminal actions in federal court."); *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) ("Only a prosecutor can file criminal charges against a citizen . . . ."). More importantly, however, the alleged prosecutorial action here — the "pursuit of a criminal prosecution" — is a "quintessential prosecutorial function[]" that is covered by absolute immunity. *Shmueli*, 424 F.3d at 237; *see also Van de Kamp*, 555 U.S. at 343 (noting that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding" (citation omitted)); *Ogunkoya*, 913 F.3d at 72 (holding prosecutor absolutely immune for actions taken "in preparing a case for indictment and deciding when, where, and how to prosecute"). Plaintiff does not allege that ADA O'Donnell's alleged pressuring of Sofroniou was investigatory (as opposed to advocacy-related) in nature, such that it would not be

covered by absolute immunity. *Cf. Smith*, 147 F.3d at 94 (noting that investigatory acts are those that include attempting to "furnish evidence on which a prosecution could be based"). Nor is it relevant that O'Donnell allegedly "had an animus towards" Plaintiff, (Am. Compl. ¶ 152), for, as noted, a prosecutor's "motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237.

Second, Plaintiff alleges that ADA O'Donnell "conspired" with New Rochelle police officers Odell, Oppedisano, and Boyko to convince the Private Defendants "to concoct a story to sustain . . . a conviction against Plaintiff." (Am. Compl. ¶ 164.) However, this advocacy-related action — convincing witnesses to testify falsely — is clearly covered by absolute immunity. *See Schmueli*, 424 F.3d at 237 (holding that "[a] prosecutor is entitled to absolute immunity despite allegations of his knowing use of perjured testimony" (citation, quotation marks, and alterations omitted)); *Hill*, 45 F.3d at 661 (holding that a prosecutor's alleged acts of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" was "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate"); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (noting that absolute immunity applies where prosecutors "conspir[e] to present false evidence at a criminal trial"); *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) ("[T]he coercion of witnesses . . . [has] been held to be [a] prosecutorial activit[y] for which absolute immunity applies." (citations omitted)); *Hamilton v. City of New York*, No. 15-CV-4574, 2019 WL 1452013, at *13 (E.D.N.Y. Mar. 19, 2019) ("[The prosecutorial employee] does not lose absolute immunity because . . . he engaged in intentional misconduct by coercing a witness to testify falsely. The fact that [he] may or may not have engaged in questionable or harmful conduct is irrelevant, because the immunity attaches to his function, not to the manner in which he performed it." (citations, quotation marks, and alterations

omitted)); *Morris v. Martin*, No. 16-CV-601, 2016 WL 4059209, at *6 (N.D.N.Y. June 21, 2016)

("Absolute immunity has been found to extend to such acts as falsification of evidence, coercion

of witnesses, solicitation and subornation of perjured testimony, withholding of evidence, and

the introduction of illegally-seized evidence." (citing *Taylor*, 640 F.2d at 452)), *adopted by* 2016

WL 4098611 (N.D.N.Y. July 28, 2016); *Collins v. City of New York*, 923 F. Supp. 2d 462, 472

(E.D.N.Y. 2013) ("No reasonable prosecutor could think it acceptable to submit false evidence

or suborn perjury, yet prosecutorial immunity attaches to such acts.").

Accordingly, because absolute immunity applies to each of the allegations asserted

against ADA O'Donnell, the Court dismisses O'Donnell from this Action.

### 8. State Law Claims

Plaintiff alleges various claims arising under New York law.  (Am. Compl. ¶¶ 190–202.)

Because the Court has dismissed all federal claims asserted by Plaintiff, the Court declines,

pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the state law

claims asserted.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)

("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be

dismissed as well." (citation omitted)); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118,

122 (2d Cir. 2006) (holding that the district court has discretion to decline to exercise

supplemental jurisdiction over state law claims where all claims over which it had original

jurisdiction were dismissed); *Sadallah v. City of Utica*, 383 F.3d 34, 39–40 (2d Cir. 2004)

(directing district court to enter judgment on federal law claims and to "dismiss any state law

claims without prejudice" (citing *Gibbs*, 383 U.S. at 726)).

### III.  Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss are granted.  The Amended

Complaint is dismissed in its entirety. Dismissal is *without* prejudice. Plaintiff may file a second amended complaint with the Court within 30 days of the date of this Opinion. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff should also consider addressing those deficiencies argued by Defendants but not considered by the Court. Plaintiff is further advised that the second amended complaint will completely replace, not supplement, the instant Amended Complaint. The second amended complaint must contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, dismissal may be *with* prejudice.

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 33, 36, 38, 51, 56, 64), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:     August  10  , 2019
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE