UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBERT COX,

                                        Plaintiff,

v.                                                                    **MEMORANDUM OPINION**
                                                                      **AND ORDER**

THE CITY OF NEW ROCHELLE, et al.,
                                                                      17-cv-8193 (PMH)

                                        Defendants.
-------------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

On October 24, 2017, Plaintiff Robert Cox ("Plaintiff"), proceeding *pro se*, commenced
this action. (Doc. 1). At some time thereafter, Plaintiff served his First Amended Complaint
("FAC").[1] (Doc. 34-2, "FAC"). On August 12, 2019, Judge Karas dismissed Plaintiff's FAC in its
entirety ("Judge Karas's Decision") and granted Plaintiff permission to file a Second Amended
Complaint. (Doc. 103, "Karas Dec."). On November 22, 2019, Plaintiff filed a Second Amended
Complaint ("SAC"). (Doc. 113, "SAC"). Plaintiff's SAC asserts claims against the same eleven
Defendants named in the FAC including (1) The City of New Rochelle ("New Rochelle"), (2)
William Odell ("Odell"), (3) Rocco Oppedisano ("Oppedisano"), (4) Robert Boyko ("Boyko"),
(5) Elizabeth Sofroniou ("Sofroniou"), (6) Vincent Cuccia ("Cuccia"), (7) Bianca Darmino
("Darmino"), (8) Anthony Vukel ("Vukel"), (9) Juan Vincent Quiao ("Quiao"), (10) Christopher
Fazio ("Fazio"), and (11) Grant O'Donnell ("ADA O'Donnell"). The SAC also names six
additional Defendants including (1) Patrick Carroll ("Carroll"), (2) Joseph Schaller ("Schaller"),

---

[1] The Amended Complaint, dated October 18, 2017, was never filed by Plaintiff with the Court. Rather, the
Amended Complaint was attached to the Declaration of Lalit K. Loomba, which was filed in support of
certain Defendants' motion to dismiss on September 21, 2018. (Doc. 34-2). Judge Karas, who presided over
this case before it was transferred to me on April 16, 2020, found that the Amended Complaint, which
"appears to have [been] served . . . directly on Defendants" was the operative pleading. (Karas Dec. at 2
n.3).

(3) Christopher Hearle ("Hearle"), (4) Claudio Carpano ("Carpano"), (5) Gregory Herring ("Herring"), and (6) Jose Pena ("Pena") (the "Unserved Defendants" and collectively "Defendants").

Plaintiff asserts seven claims for relief in his SAC: (1) conspiracy in violation of 42 U.S.C. §§ 1985 and 1986, (2) First and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, (3) Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, (4) municipal liability pursuant to *Monell*, (5-6) violations of the New York State Constitution, and (7) *respondeat superior*.

Before the Court are five motions to dismiss (collectively the "Motions") filed by: (1) Darminio (Doc. 120; Doc. 147 ("Darminio Br.")); (2) New Rochelle, Odell, Oppedisano, Boyko, Carroll, Schaller, Hearle, Carpano, Herring, and Pena (Doc. 127; Doc. 129 ("New Rochelle Br."));[2] (3) Sofroniou (Doc. 132; Doc. 135 ("Sofroniou Br.")); (4) ADA O'Donnell (Doc. 134; Doc. 137 ("O'Donnell Br.")); and (5) Cuccia (Doc. 142; Doc. 144 (Cuccia Br.")).[3]

On April 6, 2020, Plaintiff filed an Affidavit, which the Court construes as Plaintiff's opposition to the Motions. (Doc. 159, "Cox Aff."). Plaintiff's Affidavit largely advances the same factual allegations as his SAC and does not include any legal arguments or citations to case law. (See generally *id.*).[4] For the reasons that follow, the Motions are GRANTED.

---

[2] While appearances have been entered on behalf of the Unserved Defendants, the Unserved Defendants nonetheless assert, *inter alia*, that the claims against them should be dismissed for insufficient service of process. (New Rochelle Br. at 16-17).

[3] Defendants Vukel and Quaio were served on July 13, 2018 (Docs. 16, 19), but never entered an appearance, answered, or moved to dismiss. Defendant Fazio was never served. (Doc. 25 (noting summons returned unexecuted)).

[4] The same filing containing Plaintiff's Affidavit includes an Affidavit from Maria Cox, Plaintiff's wife. (Cox Aff. at 29-34).

## BACKGROUND

The facts, as recited below, are taken from the SAC. Plaintiff, a journalist, runs Talk of the Sound, a local news organization "focused on producing investigative reporting to expose abuse of power and corruption primarily in the City of New Rochelle." (SAC ¶ 1).[5] Plaintiff alleges that his reporting angered New Rochelle government officials. (*Id.* ¶¶ 2-8).

On the morning of October 19, 2014, around 1:00 a.m., Plaintiff and Maria Cox, his wife, were repeatedly awakened by loud voices coming from Vukel and Cuccia who were standing near a white car parked close to Plaintiff's home. (*Id.* ¶ 13). Plaintiff called out from his bedroom window and asked Vukel and Cuccia to leave, at which point Vukel allegedly "reacted instantly, shouting and cursing and behaving in an aggressive, belligerent, [and] threatening matter." (*Id.* ¶ 14). Plaintiff claims that Vukel walked onto Plaintiff's front lawn and threatened him and his family before disappearing from Plaintiff's view. (*Id.*). Plaintiff proceeded downstairs and grabbed a baseball bat for protection before exiting his home. (*Id.* ¶¶ 16-20). After exiting his home, Plaintiff entered the road in front of his home and the white car that Plaintiff had seen from his bedroom window drove forward and struck him. (*Id.* ¶ 22). Plaintiff then retreated to his lawn and was attacked (the "October 19 Attack") by Sofroniou, Vukel, Cuccia, Darminio, Quiao, and Fazio (the "Attacking Defendants") who "took turns repeatedly punching and kicking [Plaintiff] as they stood over him while [Plaintiff] curled up in a fetal position on the ground." (*Id.* ¶¶ 23-24, 27).

Plaintiff alleges that his wife and neighbors witnessed the attack and called 911. (*Id.* ¶¶ 29-30). New Rochelle Police Department ("NRPD") officers Odell, Oppedisano, and Boyko responded to the 911 call. (*Id.* ¶ 32). Plaintiff asserts that the Attacking Defendants "collaborated with Defendant Odell to concoct a story that served each person's interest." (*Id.* ¶ 33). According

---

[5] The paragraph numbers in the "Background" section correspond with the paragraph numbers under the "Statement of Facts" section of Plaintiff's SAC.

to Plaintiff, the Attacking Defendants would not be arrested, and in return Odell "would get retribution" for negative stories Plaintiff had published about Odell. (*Id*.). Despite multiple witnesses, the police officers on the scene allegedly did not interview anyone except the Attacking Defendants and did not permit Plaintiff to tell his side of the story. (*Id*. ¶¶ 34-36, 42). Plaintiff also alleges that other police cars in the vicinity did not respond to the scene, which permitted the attack to continue longer than it should have, increasing the danger to Plaintiff. (*Id.* ¶¶ 37-38, 55-56). Odell did respond because of his "long-standing animus" towards Plaintiff. (*Id.* ¶ 38).

Odell allegedly ordered Oppedisano to arrest Plaintiff, and members of the NRPD "orchestrated the statements" filed by Sofroniou, Cuccia, and Darminio. (*Id.* ¶¶ 43-44). Plaintiff avers that Boyko told Sofroniou Plaintiff's name and that Pena told Darminio Plaintiff's name so it could be included in the police report. (*Id.* ¶¶ 48-50). Plaintiff alleges that the NRPD Officers "conspired" with the Attacking Defendants "to create 'facts' with information provided by the police." (*Id*. ¶ 51). The Attacking Defendants were not arrested and NRPD officers resisted efforts from Plaintiff to file a complaint against the Attacking Defendants. (*Id.* ¶¶ 60, 76). Hearle allegedly stated at NRPD headquarters "that he had no problem with [Plaintiff] being assaulted and that [Plaintiff] got what he deserved." (*Id.* ¶¶ 62, 78). Carpano and Herring were the NRPD officers charged with investigating the incident, but, according to Plaintiff, they did not make a good faith effort to investigate in an effort to appease Hearle and Schaller, their bosses, who "had shown animus towards [Plaintiff] based on his reporting." (*Id.* ¶¶ 66-67, 84-87, 92-99). Plaintiff claims he was told by Hearle that NRPD has a policy against permitting those arrested of crimes from filing "cross-complaints" and that Plaintiff is aware of other citizens who were prevented from filing "cross-complaints" after they were arrested. (*Id.* ¶¶ 79-81).

On December 3, 2014, Plaintiff attempted to go to NRPD headquarters for a press conference related to a story Plaintiff reported about an NRPD investigation. (*Id*. ¶ 68). Plaintiff claims he was prevented from entering because Carroll did not want Plaintiff to be at the press conference. (*Id.* ¶¶ 68-69). Plaintiff asserts that this "was part of a broader pattern of behavior" and that Schaller had "routinely blocked [Plaintiff] from press availabilities" because he was unhappy with Plaintiff's reporting. (*Id.* ¶¶ 70-75). After the press conference, Plaintiff saw Carpano and asked how the investigation into the October 19 Attack was going, to which Carpano replied, "the case against is you [sic] is bullshit, if your name wasn't 'Robert Cox' these charges would never have been brought." (*Id.* ¶¶ 88-91).

Plaintiff avers that Carpano and Herring "had the ability to stop the wrongful prosecution of [Plaintiff] and the violation of his constitutional rights by investigating his complaint and reporting the reason the case against [Plaintiff] was false to the District Attorney or another government official independent of NRPD." (*Id.* ¶ 100). Nonetheless, the police worked with the District Attorney's Office and the Attacking Defendants to "concoct a story that would lead to charges against [Plaintiff] and ultimately [led] to [Plaintiff's] arrest and [Plaintiff] being found guilty of a crime." (*Id.* ¶ 113). ADA O'Donnell allegedly conducted his own investigation. (*Id.* ¶¶ 114-120). Plaintiff claims that ADA O'Donnell convinced Sofroniou to pursue criminal charges against Plaintiff and got Darminio and Cuccia to testify against Plaintiff. (*Id*. ¶ 122). Plaintiff states that NRPD "has a practice and policy of violating constitutional rights by allowing police officers to falsify records with impunity as was the case with Defendant Hearle when he falsified records, allowing police harassment . . . not allowing citizens to file complaints of police misconduct . . . [and] failing to take immediate disciplinary action." (*Id*. ¶ 124).

## STANDARD OF REVIEW

I.  **Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, a court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)) (internal quotation marks

omitted). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Cappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [] 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)). Therefore, while the Court is "obligated to draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [the plaintiff] has not pled." *Chavis*, 618 F.3d at 170.

The Court also has a duty to interpret the pleadings of a *pro se* plaintiff liberally "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

While the SAC contains additional factual allegations and specificity regarding the October 19 Attack, the claims for relief asserted largely overlap with the claims for relief asserted in the FAC. (*Compare* FAC ¶¶ 163-204, *with* SAC at 32-39).[6] Specifically, the SAC contains six claims

---

[6] Because Plaintiff uses inconsistent paragraph numbering, the Court refers to page numbers assigned by ECF for the portion of Plaintiff's SAC in which he asserts claims for relief.

for relief that are identical to claims for relief asserted in the FAC including: (1) a First Amendment retaliation claim pursuant to § 1983 (SAC at 34-35), (2) a Fourth Amendment unreasonable search and seizure and arrest without probable cause claim pursuant to § 1983 (*id.* at 35), (3) a *Monell* municipal liability claim (*id.* at 36-37), (4-5) claims pursuant to the New York State Constitution (*id.* 37-39), and (6) *respondeat superior* (*id.* at 39). Regarding Plaintiff's conspiracy claim for relief, the SAC asserts a conspiracy pursuant to 42 U.S.C. §§ 1985 and 1986 (*id.* at 32-34) while the conspiracy claim asserted in the FAC was interpreted as a conspiracy claim brought pursuant to § 1983 (FAC ¶¶ 163-66; Karas Dec. at 10-14).[7]  Because the six identical claims for relief were dismissed by Judge Karas on August 12, 2019,[8] the Court's analysis of these claims includes whether Plaintiff cured the pleading deficiencies identified in Judge Karas's Decision. Plaintiff's conspiracy claim for relief brought pursuant to §§ 1985 and 1986 is analyzed anew.

## I.    <u>Statute of Limitations for First and Fourth Amendment Claims</u>

Plaintiff's second and third claims for relief are asserted pursuant to § 1983. Plaintiff's second claim for relief asserts a First Amendment retaliation claim against New Rochelle, NRPD,[9]

---

[7] Plaintiff did not allege a conspiracy pursuant to § 1983 or any other identified statute in his FAC. The Court, however, interpreted the conspiracy claim in Plaintiff's FAC as a claim brought pursuant to § 1983.

[8] Plaintiff also asserted a Fifth and Fourteenth Amendment claim (FAC ¶¶ 170-73), and a state law malicious prosecution claim (*id*. ¶¶ 196–202) in his FAC. These claims have been dropped in Plaintiff's SAC.

[9] NRPD is not named as a Defendant and was not served. Therefore, Plaintiff cannot assert claims against NRPD.

John Doe Defendants,[10] and ADA O'Donnell.[11] (SAC at 34-35). Plaintiff's third claim for relief

asserts a Fourth Amendment violation against New Rochelle and NRPD. (*Id.* at 35). Judge Karas's

Decision found that Plaintiff's § 1983 claims were barred by the statute of limitations. (Karas Dec.

at 9–10). Because the § 1983 claims asserted in the SAC suffer from the same deficiency—they

are time-barred—these claims are again dismissed.

The statute of limitations for Plaintiff's § 1983 claims is three years. (Karas Dec. at 9 (citing

*Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002))). "The statute of limitations accrues

when the plaintiff knows of the injury on which the claim is based." *Maier v. Phillips*, 205 F.3d

1323 (2d Cir. 2000) (citing *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir.

1997)). Here, the statute of limitations began running on October 19, 2014, the date on which the

events giving rise to this dispute occurred. (*See* SAC ¶ 13). Therefore, the statute of limitations

expired on October 19, 2017. Plaintiff's Complaint was filed on October 24, 2017 (*see* Doc. 1),

five days after the expiration of the statute of limitations period.[12] Plaintiff's SAC does not address

---

[10] Plaintiff did not identify the John Doe Defendants before the statute of limitations expired and therefore any claims against unidentified John Doe Defendants are dismissed. *See Curkin v. City of New York*, No. 18-CV-7541, 2020 WL 5628042 (S.D.N.Y Sept. 21, 2020) ("In New York, claims under § 1983 are subject to a three-year statute of limitations . . . running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim. As a general matter, John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a John Doe with a named party in effect constitutes a change in the party sued." (quoting *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015); *Harrigan v. City of New York*, No. 19 Civ. 3489, 2020 WL 2555307, at *4 (S.D.N.Y. May 20, 2020)) (internal quotations and citations omitted)).

[11] Judge Karas's Decision found that ADA O'Donnell is protected by absolute prosecutorial immunity. (Karas Dec. at 21-27). Plaintiff has not presented any new facts or allegations that alter this finding Therefore, even assuming Plaintiff's claims against ADA O'Donnell was not time-barred or otherwise flawed, the Court would dismiss any claims against ADA O'Donnell because he is protected by absolute prosecutorial immunity.

[12] Plaintiff's FAC is dated October 18, 2017 but was never filed by Plaintiff via ECF. Judge Karas found that, despite the fact that the FAC is dated October 18, 2017, "[t]here is no indication of a filing" prior to October 24, 2017. (Karas Dec. at 9-10). The fact remains that the earliest docket entry in this action is October 24, 2017, the date on which Plaintiff's initial Complaint was filed. (Doc. 1).

the pleading deficiency or assert any reason why the claims are not foreclosed by the applicable three-year statute of limitations. Accordingly, the Court adopts the same analysis applied to Plaintiff's § 1983 claims in Judge Karas's Decision and dismisses Plaintiff's § 1983 claims—the second and third claims for relief—as time barred. (*See* Karas Dec. at 9–10).[13]

## II.   <u>Conspiracy Claim</u>

Plaintiff's FAC asserted a conspiracy claim for relief pursuant to 42 U.S.C. § 1983. (FAC ¶¶ 163-66; *see also* Karas Dec. at 10-14). Judge Karas found that "[a]llegations of a conspiracy . . . must be ple[d] with specificity, a heightened standard," (Karas Dec. at 11 (quoting *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858925, at *5 (S.D.N.Y. Feb. 29, 2016) (internal quotations omitted)), and that "Plaintiff's allegations are insufficiently specific to plausibly meet the 'heightened standard' required to state a claim," (*id.* at 12). Thus, Plaintiff's § 1983 conspiracy claim was dismissed. (*Id.*).

The first claim for relief in Plaintiff's SAC asserts a conspiracy pursuant to 42 U.S.C. §§ 1985 and 1986 against all Defendants. (SAC at 32-33). A plaintiff can state a conspiracy claim for relief under § 1985 by alleging: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)). Unlike a conspiracy claim predicated on § 1983, a

---

[13] Judge Karas's Decision found that even if Plaintiff's § 1983 claims were not time-barred, Plaintiff failed to satisfy the elements of a false arrest, malicious prosecution, or excessive force claim. (Karas Dec. at 15-17). Because the Court finds that Plaintiff's § 1983 claims are time-barred, the Court does not re-analyze whether Plaintiff's allegations are sufficient to state a claim for relief under any of the § 1983 theories previously analyzed in Judge Karas's Decision.

conspiracy claim predicated on § 1985 must "be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 649 (S.D.N.Y. 2020) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs., Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)); *see also Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). Section 1986 "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in [§] 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Roach*, 165 F.3d at 147 (quoting *Mian*, 7 F.3d at 1088). "A § 1986 claim must be predicated upon a valid § 1985 claim." *Id*. (citing *Mian*, 7 F.3d at 1088).

Here, Plaintiff does not assert any facts indicating that the alleged conspiracy was motivated by discriminatory animus. Rather, Plaintiff asserts that the conspiracy was intended "to deprive plaintiff of his constitutionally-protected property rights and right to free speech." (SAC at 33). The gravamen of the conspiracy claim is that NRPD officers conspired with the Attacking Defendants to "concoct a story that would lead to charges against [Plaintiff] and ultimately [led] to [Plaintiff's] arrest and [Plaintiff] being found guilty of a crime." (*Id*. ¶ 113; *see also id.* ¶ 51 (alleging that NRPD officers "conspired" with the Attacking Defendants "to create 'facts'")). While Plaintiff claims that certain Defendants "had shown animus towards [Plaintiff]," that animus was allegedly "based on [Plaintiff's] reporting," not his race or some other protected characteristic. (*Id.* ¶ 66; *id.* ¶ 33 ("Defendant Carroll and Defendant Schaller [] had animus towards [Plaintiff] for this reporting on corruption by Defendant Carroll and Defendant Schaller.")). The absence of any allegation that Plaintiff faced animus based on his race, or any other protected characteristic, forecloses Plaintiff's §§ 1985 and 1986 conspiracy claims. Thus, Plaintiff's conspiracy claim brought pursuant to §§ 1985 and 1986 is dismissed.

Assuming *arguendo* that Plaintiff intended in his SAC to re-assert a conspiracy claim under § 1983, the Court finds that Plaintiff has failed to state a claim for relief. Judge Karas found that Plaintiff had failed to plead a § 1983 conspiracy claim with the requisite particularity. (Karas Dec. at 12-14).[14] The SAC does not cure this pleading deficiency. Plaintiff's SAC asserts that: (1) "When Defendant Odell arrived he approached [the Attacking Defendants] and stood with them as they went back and forth over various versions of their stories (SAC ¶ 33); (2) the Attacking Defendants "collaborated with Defendant Odell to concoct a story that served each person's interest" (*id.*); (3) "Members of the New Rochelle Police Department orchestrated the statements filed by Defendant Sofroniou, Defendant Cuccia, Defendant Darminio" (*id.* ¶ 44); (4) "Defendant Odell, Defendant Oppedisano and Defendant Boyko and other New Rochelle Police Officers conspired with Defendant Sofroniou, Defendant Cuccia, Defendant Darminio to create 'facts' with information provided by the police" (*id.* ¶ 51); and (5) "Defendant Odell, Defendant Oppedisano and Defendant Boyko along with Defendant Pena collaborated with Defendant Sofroniou, Defendant Cuccia, Defendant Danninio to manufacture written statements that deliberately omitted Defendant Quiao and Defendant Fazio" (*id.* ¶ 102). The alleged purpose of this conspiracy was that the Attacking Defendants "would not be arrested for assaulting [Plaintiff] and Defendant Odell would get retribution" against Plaintiff based on negative stories and reporting about Odell and other NRPD officers. (*Id.* ¶ 33). Thus, allegedly, the Attacking Defendants and the NRPD officers worked in concert to violate Plaintiff's constitutional rights by wrongfully prosecuting him for the October 19 Attack. (*See id.* ¶ 100; *id.* ¶ 113 (alleging that the police worked with the District Attorney's Office and the Attacking Defendants to "concoct a story that would lead to

---

[14] Judge Karas also found that "to the extent Plaintiff's conspiracy claim rests on alleged lies told at his criminal trial . . . Defendants are immune from liability." (Karas Dec. at 11-12). To the extent Plaintiff reasserts a conspiracy claim predicated on any Defendants' trial testimony (*see, e.g.*, SAC ¶ 122), those claims are dismissed for the same reason that they were dismissed by Judge Karas.

charges against [Plaintiff] and ultimately [led] to [Plaintiff's] arrest and [Plaintiff] being found guilty of a crime.")).

A Plaintiff can plead a § 1983 conspiracy claim by alleging facts that show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *McGee v. Dunn*, No. 09-CV-6098, 2015 WL 9077386, at *5 (S.D.N.Y. Dec. 16, 2015) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)), *aff'd*, 672 F. App'x 115 (2d Cir. 2017). Judge Karas found that Plaintiff insufficiently alleged an "agreement." Judge Karas wrote that Plaintiff's allegations:

> [D]o not plausibly suggest that there existed an agreement, whether 'express or tacit,' between the Private Defendants and the State Defendants to violate Plaintiff's civil rights. *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). A conspiracy claim requires 'some factual basis supporting a meeting of the minds.' *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (citation and quotation marks omitted)). Yet, '[c]ritically absent from the [Amended] Complaint are any specific facts identifying willful collaboration between [the Private Defendants] and [the State Defendants] to deny Plaintiff's constitutional rights . . . or [an] agreement between the[m] . . . forming the conspiracy.' *Harrison v. New York*, 95 F. Supp. 3d 293, 325 (E.D.N.Y. 2015) (citations omitted). Indeed, as to Sofroniou — the one Private Defendant about whom there are specific factual allegations — that she allegedly 'did not want to file charges,' (Am. Compl. ¶¶ 150–51), suggests that she did not willfully collaborate in any conspiracy. The Private Defendants' '[m]ere cooperation' (at best) with State Defendants 'is insufficient to establish state action.' *Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) (citations omitted). Accordingly, the Court dismisses Plaintiff's conspiracy claim.

(Karas Dec. at 13). The Court finds once again that Plaintiff's allegations in the SAC are insufficient to establish an agreement between the Attacking Defendants and NRPD officers.

To survive a motion to dismiss, a Plaintiff must "present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (quoting *Bacquie v. City of New York*, No. 99-CV-10951, 2000 WL 1051904, at *1-2 (S.D.N.Y. July 31,

2000)). "Without 'a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy.'" *Id*. (quoting *Sales v. Murray*, 862 F.Supp. 1511, 1516–17 (W.D. Va. 1994)). This requires allegations of "overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *K.D. ex rel. Duncan,* 921 F. Supp. 2d at 209 (quoting *Roach*, 165 F.3d at 147).

Here, Plaintiff alleges that (1) the Attacking Defendants "collaborated" with the NRPD officers to "concoct a story" (SAC ¶ 33); (2) the NRPD officers "orchestrated the statements" of certain of the Attacking Defendants (*id*. ¶ 44); (3) the NRPD officers "conspired" with certain Defendants to "create facts" (*id*. ¶ 51); and (4) the NRPD officers "collaborated" with the Attacking Defendants to "manufacture written statements" (*id*. ¶ 102). These conclusory allegations are insufficient to establish that an "express or tacit" agreement existed between the NRPD officers and the Attacking Defendants to violate Plaintiff's constitutional rights. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). That Plaintiff believes certain NRPD officers harbored animus against him and that the Attacking Defendants sought to avoid arrest related to the October 19 Attack does not plausibly suggest an agreement. A "conspiracy claim fails . . . where allegations are conclusory," *Cuellar v. Love*, No. 11-CV-3632, 2014 WL 1486458, at *9 (S.D.N.Y. Apr. 11, 2014), and "[a]llegations of a conspiracy . . . must be ple[d] with specificity," *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL858925, at *5 (S.D.N.Y. Feb. 29, 2016). Because Plaintiff's conspiracy allegations are conclusory and are not pled with specificity, Plaintiff's first claim for relief is dismissed.

## III.   Municipal Liability Claim

Plaintiff's fourth claim for relief asserts a *Monell* municipal liability claim. "[T]o prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is

required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Judge Karas found that Plaintiff had failed to satisfy the second and fifth elements of a municipal liability claim (*i.e.* all of Plaintiff's underlying alleged constitutional violations were time barred and/or failed on the merits and Plaintiff failed to identify an official municipal policy). (Karas Dec. at 18–20). Because the Court has already found *supra* that Plaintiff's constitutional claims are time-barred or fail on the merits, the Court finds that Plaintiff cannot bring a *Monell* municipal liability claim because he cannot demonstrate that he was deprived of his constitutional rights. Accordingly, the Court need not determine whether Plaintiff's SAC adequately pleads an official policy and Plaintiff's fourth claim for relief is dismissed.

## IV.    *Respondeat Superior*

Judge Karas found that Plaintiff's claim for *respondeat superior* cannot survive because "*respondeat superior* is a theory of liability, not a freestanding cause of action." (Karas Dec. at 8 n.4 (quoting *Scott v. City of Mount Vernon*, No. 14-CV-4441, 2017 WL 1194490, at *25 (S.D.N.Y. Mar. 30, 2017))). Nothing has changed; and accordingly, Plaintiff's seventh claim for relief is dismissed.

## V.    State Law Claims

Judge Karas determined that the Court, after dismissing Plaintiff's federal law claims, was declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's state law claims. (Karas Dec. at 27). The Court here has again dismissed all of Plaintiff's federal claims and again declines to exercise supplemental jurisdiction. *See United Mine Workers of Am.*

*v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). Accordingly, Plaintiff's fifth and sixth claims for relief are dismissed.[15]

## VI.   **The Unserved Defendants**

Plaintiff's SAC asserts claims against six Defendants—Carroll, Schaller, Hearle, Carpano, Herring, and Pena—not previously named in Plaintiff's Complaint or FAC. The Court finds that any claims asserted against the Unserved Defendants must be dismissed for lack of personal jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). To date, service has not been effectuated on any of these Defendants.[16] Federal Rule of Civil Procedure 4 provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

---

[15] The Court need not address the many other arguments advanced in the Motions related to Plaintiff's federal or state law claims. Plaintiff's federal claims are all time-barred and/or fail on the merits and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Analysis of the remaining arguments raised by Defendants in the Motions is superfluous and unnecessary.

[16] Defendant Fazio was named in Plaintiff's FAC, but also was never served. *See supra* n.2.

Fed. R. Civ. P. 4(m). Here, Plaintiff's SAC was filed on November 22, 2019 (Doc. 113), and thus the 90-day period to serve these newly named Defendants has long expired. Therefore, Plaintiff's claims against the Unserved Defendants are dismissed.[17]

## **CONCLUSION**

The Court GRANTS Defendants' Motions. Additionally, Plaintiff cannot be given an opportunity to file a Third Amended Complaint, as any amendment to a complaint would be futile. Accordingly, leave to replead is denied. *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019). Plaintiff's § 1983 claims are time-barred and therefore any amendment would be futile. Furthermore, Plaintiff has already been given multiple opportunities to amend his pleading, including his conspiracy claim, and has not cured the identified pleading deficiencies. Separately, where a plaintiff has been given notice of deficiencies in his pleading and has "failed to take advantage of his opportunities to cure or attempt to cure them," leave to replead is likewise properly denied. *Elgalad v. New York City Dep't of Educ.*, No. 17-CV-4849, 2019 WL 4805669,

---

[17] Since August 3, 2018, Defendants Vukel and Quaio have been in default. *See supra* n.2; (Docs. 16, 19). Plaintiff has never moved for default judgment pursuant to Federal Rule of Civil Procedure 55 or otherwise addressed these Defendants' failure to defend this action with the Court. Furthermore, it does not appear from the docket that Plaintiff served the FAC or SAC on these Defendants. Even assuming *arguendo* that Plaintiff had sought certificates of default and moved for default judgment the "court has discretion to decide whether or not to enter a default judgment." *Evans v. Esparra*, No. 00-CV-0658, 2000 WL 1946822, at *4 (S.D.N.Y. Jan. 9, 2000) (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)); *see also Lau v. Cooke*, 208 F.3d 203, at *2 (2d Cir. 2000) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." (quoting *Enron Oil Corp. v. Diakuhara*, 10 F .3d 90, 95 (2d Cir. 1993))). Here, because Plaintiff's claims are time-barred and/or fail on the merits, the Court would decline to enter default judgments against these Defendants if Plaintiff sought entry of a default judgment and therefore it is appropriate to dismiss claims against these Defendants at this time. *See Evans*, 2000 WL 1946822, at *4 ("Given the fact that the claim would be time-barred even if Sgt. Bowden had been served [and failed to answer or move] . . . I decline to enter a default judgment against him."); *see also Cancel v. City of New York*, No. 07-CV-4670, 2010 WL 8965889, at *7 (E.D.N.Y. Mar. 3, 2010), *report and recommendation adopted*, No. 07-CV-4670, 2012 WL 4364662 (E.D.N.Y. Sept. 24, 2012), *aff'd sub nom. Cancel v. Amakwe*, 551 F. App'x 4 (2d Cir. 2013) (finding that defendant "never appeared in this action and plaintiff did not move for a default against him" but nonetheless dismissing claim against defendant because plaintiff's allegations did not establish an element of § 1983 claim).

at *10 (S.D.N.Y. Sept. 30, 2019). Finally, as to the Unserved Defendants, while Rule 4(m) permits a court to dismiss claims against unserved defendants without prejudice where, as here, "[t]he same grounds for dismissal of the [served Defendants] . . . warrant[s] dismissal of the [SAC] as to the Unserved Defendants" dismissal with prejudice is appropriate. *Cartwright v. D'Alleva*, No. 17-CV-5953, 2018 WL 9343524, at *9 (S.D.N.Y. Aug. 27, 2018), *aff'd*, 782 F. App'x 77 (2d Cir. 2019). Thus, the Court dismisses Plaintiff's claims with prejudice.

The Clerk is instructed to terminate the pending motions (Docs. 120, 127, 132, 134, 142), and close this case.

**SO ORDERED:**

Dated:  New York, New York
       September 28, 2020

_____
Philip M. Halpern
United States District Judge